UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MIGUEL GONZALEZ, et al.,<br><br>Defendant. | No. 1:14-cr-228-2-NONE<br><br>ORDER DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE<br><br>(Doc. No. 463) |

Pending before the court is defendant Miguel Gonzalez's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The motion is largely based on defendant's medical condition and the risks posed to him by the ongoing coronavirus ("COVID-19") outbreak. (Doc. No. 463.) For the reasons explained below, defendant's motion will be denied.

**BACKGROUND**

On March 30, 2015, defendant Gonzalez entered his plea of guilty to a structuring conspiracy by conducting financial transactions in such a way to cause banks to fail to file Currency Transaction Reports and doing so in connection with a drug trafficking conspiracy, all in violation of 18 U.S.C. § 371, as charged in Count of the indictment. (Doc. Nos. 142 at 3; 141.) According to the Presentence Report prepared in his case, defendant Gonzalez was a participant in a conspiracy ship marijuana from California to Florida and Georgia. (Doc. No. 309

(Presentence Report) at 5–6.)  Proceeds from those marijuana sales "were funneled back to California through structured bank deposits (in Florida) and withdrawals (in California)." (*Id.* at 5.) "The deposits were made in amounts of $10,000 or less in order to prevent, or attempt to prevent, the financial institutions from filing Currency Transaction Reports on those transactions." (*Id.* at 5–6.)  It was determined that under the U.S. Sentencing Guidelines defendant Gonzalez's adjusted offense level was 27 and his criminal history category was III, resulting in an advisory sentencing guideline range calling for a sentence of the statutory maximum sentence of 60 months imprisonment.[1] (*Id.* at 16.)  The U.S. Probation Office recommended a sentence of 60 months imprisonment. (*Id.*)  Despite this recommendation, on February 6, 2017, the sentencing judge departed downward from the advisory sentencing guideline range and sentenced defendant Gonzalez to a 60 month term of probation with conditions.  (Doc. Nos. 385; 386 at 2, 388.)

On March 14, 2018, the U.S. Probation Office filed a petition for probation violation and an arrest warrant was issued for defendant.  (Doc. No. 398.)  Specifically, defendant violated the conditions of his probation by engaging in the same conduct that resulted in his probationary sentence (i.e., shipping marijuana), unlawfully possessing controlled substances, associating with his co-defendants in this case, and failing to comply with the other conditions of his probation that had been imposed just more than a year earlier. (*Id.* at 2–3, 6–8.)  Defendant Gonzalez admitted to the charges set forth in the violation petition, his probation was revoked, and, on December 10, 2018, defendant was sentenced to 60 months in the custody of the BOP with a 36 month term of supervised release to follow.  (Doc. Nos. 454; 459; 460 at 2–3.)

Defendant is currently serving his sentence at the U.S. Bureau of Prisons' ("BOP") Terminal Island Federal Correctional Institute in San Pedro, California ("FCI Terminal Island"). (Doc. No. 463 at 7.)  On June 10, 2020, counsel on behalf of defendant filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A).  (Doc. No. 463.)  On July 1,

---

[1] But for the statutory maximum for the charge to which defendant Gonzalez pled guilty, his adjusted offense level and criminal history category would have called for a sentence of between 70 and 87 months in prison.

2

2020, the government filed its opposition to the motion. (Doc. No. 470.) No reply brief in support of the motion has been filed by defendant's counsel and the time to do so has passed.

## LEGAL STANDARD

A court generally "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c); *see also Dillon v. United States*, 560 U.S. 817, 824 (2010) ("'[A] judgment of conviction that includes [a sentence of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances."). Those limited circumstances include compassionate release in extraordinary cases. *See United States v. Holden*, 452 F. Supp. 3d 964, 968 (D. Or. 2020). Prior to the enactment of the First Step Act of 2018 ("the FSA"), motions for compassionate release could only be filed by the BOP. 18 U.S.C. § 3582(c)(1)(A) (2002). Under the FSA, however, imprisoned defendants may now bring their own motions for compassionate release in the district court. 18 U.S.C. § 3582(c)(1)(A) (2018). In this regard, the FSA specifically provides that a court may

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf[2] or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds that –
>
> (i)   extraordinary and compelling reasons warrant such a reduction; or
>
> (ii)  the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made

---

[2] If the BOP denies a defendant's request within 30 days of receipt of such a request, the defendant must appeal that denial to the BOP's "Regional Director within 20 calendar days of the date the Warden signed the response." 28 C.F.R. § 542.15(a). If the Regional Director denies a defendant's administrative appeal, the defendant must appeal again to the BOP's "General Counsel within 30 calendar days of the date the Regional Director signed." *Id.* "Appeal to the General Counsel is the final administrative appeal." *Id.* When the final administrative appeal is resolved, a defendant has "fully exhausted all administrative rights." *See* 18 U.S.C. § 3582(c)(1)(A).

>by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission [.]

18 U.S.C. § 3582(c)(1)(A)(i) and (ii).[3]

The applicable policy statement with respect to compassionate release in the U.S. Sentencing Guidelines sets out criteria and circumstances describing "extraordinary and compelling reasons." U.S. Sentencing Guidelines Manual ("U.S.S.G.") § 1B1.13[4]; *see also United States v. Gonzalez*, No. 2:18-cr-00232-TOR, 2020 WL 1536155, at *2 (E.D. Wash. Mar. 31, 2020) (noting that courts "universally" rely on U.S.S.G. § 1B1.13 to define "extraordinary and compelling reasons," even though that policy statement was issued before Congress passed

---

[3] Under 18 U.S.C. § 3624(c)(2), the BOP may release an incarcerated defendant to home confinement "for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." The Coronavirus Aid, Relief, and Economic Security Act ("the CARES Act"), Pub. L. 116-136, expands the BOP's authority to release incarcerated defendants without judicial intervention. The CARES Act allows the BOP to "lengthen the maximum amount of time" for which a prisoner may be placed in home confinement under § 3624(c)(2) "as the Director determines appropriate," assuming "the Attorney General finds that emergency conditions will materially affect the functioning" of the BOP. CARES Act, Pub. L. 116-136, Div. B, Title II, § 12003(b)(2) (2020). However, the BOP's authority in this regard is limited to "the covered emergency period." *Id.* The BOP's authority expires "30 days after the date on which the national emergency declaration terminates." *Id.* § 12003(a)(2). After the CARES Act was enacted, the Attorney General issued a memo instructing the BOP to "immediately review all inmates who have COVID-19 risk factors" beginning with those who are housed at facilities where "COVID-19 is materially affecting operations." Office of Att'y Gen., *Increasing Use of Home Confinement at Institutions Most Affected by COVID-19* (Apr. 3, 2020). The BOP has acted on the Attorney General's guidance, including one case in which a sentenced prisoner was released to home confinement after serving less than half his sentence from a facility that reported no positive COVID-19 cases at the time of his release. *See* Hannah Albarazi, *Paul Manafort Seeks Prison Release Over COVID-19 Fears*, LAW360 (Apr. 14, 2020), https://www.law360.com/articles/1263706/paul-manafort-seeks-prison-release-over-covid-19-fears (noting that the prisoner's counsel had argued that the CARES Act "broadens the authority" of the BOP to release prisoners to home confinement); Khorri Atkinson, *Paul Manafort Released From Prison Amid COVID-19 Fears*, LAW360 (May 13, 2020), https://www.law360.com/articles/1273090/paul-manafort-released-from-prison-amid-covid-19-fears.

[4] The Sentencing Guidelines also require that to be granted a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A), the defendant must not pose "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

the FSA and authorized defendants to file compassionate release motions).  However, a large and growing number of district courts across the country have concluded that because the Sentencing Commission has not amended the Guidelines since the enactment of the FSA, courts are not limited by the pre-FSA categories described in U.S.S.G. § 1B1.13 in assessing whether extraordinary and compelling circumstances are presented justifying a reduction of sentence under 18 U.S.C. § 3582(c).  *See, e.g.*, *United States v. Parker*, __ F. Supp.3d __, 2020 WL 2572525, at *8–9 (C.D. Cal. May 21, 2020) (collecting cases); *United States v. Rodriguez*, 424 F. Supp. 3d 674, 681 (N.D. Cal. 2019).

In the past, when moving for relief under 18 U.S.C. § 3582(c), it was recognized that the defendant bore the initial burden of demonstrating that a sentence reduction was warranted.  *See United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998).  Although the Ninth Circuit has not specifically addressed the question of which party bears the burden in the context of a motion for compassionate brought pursuant to § 3582(c) as amended by the FSA, district courts that have done so have agreed that the burden remains with the defendant.  *See, e.g.*, *United States v. Greenhut*, No. 2:18-cr-00048-CAS, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Van Sickle*, No. 18-cr-0250-JLR, 2020 WL 2219496, at *3 (W.D. Wash. May 7, 2020).

## ANALYSIS

As district courts have summarized, in analyzing whether a defendant is entitled to compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), the court must determine whether a defendant has satisfied three requirements:

> First, as a threshold matter, the statute requires defendants to exhaust administrative remedies.  18 U.S.C. § 3582(c)(1)(A).  Second, a district court may grant compassionate release only if "extraordinary and compelling reasons warrant such a reduction" and "that such reduction is consistent with applicable policy statements issued by the Sentencing Commission.  *Id.*  Third, the district court must also consider "the factors set forth in Section 3553(a) to the extent that they are applicable." *Id.*

*Rodriguez*, 424 F. Supp. 3d at 680; *see also United States v. Ramirez-Suarez*, 16-CR-00124-LHK-4, 2020 WL 3869181, at *2 (N.D. Cal. July 9, 2020); *Parker*, 2020 WL 2572525, at *4;

5

*United States v. Trent*, No. 16-cr-00178-CRB-1, 2020 WL 1812242, at *2 (N.D. Cal. Apr. 9, 2020) (noting that as to the third factor, under 18 U.S.C. § 3582(c)(1)(A) release must be "consistent with" the sentencing factors set forth in §3553(a)).

**A.     Administrative Exhaustion**

On April 14, 2020, defendant submitted an administrative request seeking compassionate release from the Warden at FCI Terminal Island. (Doc. No. 470-1 at 7.)  The BOP denied defendant's request on May 21, 2020. (*Id.*)  However, because the Warden failed to respond to defendant's administrative request within 30 days of its submission, the government concedes that defendant has exhausted his administrative remedies. (Doc. No. 470 at 5.)  Therefore, the court will turn to the merits of the pending motion.

**B.     Extraordinary and Compelling Reasons**

"Extraordinary and compelling reasons" warranting compassionate release may exist based on a defendant's medical conditions, age and other related factors, family circumstances, or "other reasons." U.S.S.G. § 1B1.13, cmt. n.1 (A)–(D).  Even though the catch-all of "other reasons" was included in the policy statement at a time when only BOP could bring a compassionate release motion, courts have agreed that it may be relied upon by defendants bringing their own motions under the FSA. *See, e.g.*, *United States v. Kesoyan*, No. 2:15-cr-236-JAM, 2020 WL 2039028, at *3–4 (E.D. Cal. Apr. 28, 2020) (collecting cases).

Thus, the medical condition of a defendant may warrant compassionate release where he or she "is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory)," though "[a] specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required." U.S.S.G. § 1B1.13, cmt. n.1 (A)(i).  Non-exhaustive examples of terminal illnesses that may warrant a compassionate release "include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.*  In addition to terminal illnesses, a defendant's debilitating physical or mental condition may warrant compassionate release, including when:

/////

/////

>The defendant is
>
>>(I) suffering from a serious physical or medical condition,
>>
>>(II) suffering from a serious functional or cognitive impairment, or
>>
>>(III) experiencing deteriorating physical or mental health because of the aging process,
>
>that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

*Id.* at cmt. n.1 (A)(ii). Where a defendant has moderate medical issues that otherwise might not be sufficient to warrant compassionate release under ordinary circumstances, some courts have concluded that the risks posed by COVID-19 tips the scale in favor of release in particular situations. *See, e.g.*, *United States v. Rodriguez*, No. 2:03-cr-00271-AB, 2020 WL 1627331, at *10–11 (E.D. Pa. Apr. 1, 2020) ("Without the COVID-19 pandemic—an undeniably extraordinary event—Mr. Rodriguez's health problems, proximity to his release date, and rehabilitation would not present extraordinary and compelling reasons to reduce his sentence. But taken together, they warrant reducing his sentence.").

Compassionate release may also be warranted based on a defendant's age and other related factors. In these situations, "extraordinary and compelling reasons" exist where a "defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." U.S.S.G. § 1B1.13, cmt. n.1(B).[5] In determining a defendant's projected release date, courts may take into account any "good time credits" awarded to the defendant by BOP for "exemplary" behavior in prison as set forth in 18 U.S.C. § 3624(b)(1). *See, e.g.*, *United States v. Burrill*, No. 17-cr-00491-RS, 2020 WL 1846788, at *1 n.1 (N.D. Cal. Apr. 10, 2020).

Here, defendant Gonzalez argues that extraordinary and compelling reasons warranting his compassionate release exist due to the general risk posed by COVID-19. (*See passim* Doc.

---

[5] However, because defendant Gonzalez is only 36 years old (Doc. No. 309 at 3), his age and age-related factors do not play a role in consideration of his pending motion.

No. 463.) Defendant does not argue that he suffers from any health condition that places him at greater risk for contracting a severe illness from COVID-19. (*See* Doc. No. 470 (Government's Opposition) at 4 n.1 ("Gonzalez does not claim that he has any underlying health conditions that make him more suspectable to COVID-19, and he has tested negative.").) In order to qualify for compassionate release, however, a defendant must demonstrate that he is suffering from some "serious" medical condition "that substantially diminishes [his] ability . . . to provide self-care" in FCI Terminal Island and that the medical condition is one "from which he . . . is not expected to recover." U.S.S.G. § 1B1.13, cmt. n.1 (A)(ii). Defendant's motion falls far short in this regard. Defendant does not identify any medical condition from which he suffers, let alone a "serious" one. At the time of sentencing, defendant himself noted that "he is healthy and the only major injury he could recall was a dislocated left shoulder when he was in the fifth grade. He stated he has no lingering effects from the injury." (Doc. No. 309 (Presentence Report) at 14.) As the Third Circuit recently held in two cases, the general risk of COVID-19 to a federal prisoner by itself is not a sufficient basis upon which to grant compassionate release. *See United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]"); *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020) ("[T]he existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit.").

     The court agrees with this conclusion. Defendant cannot establish extraordinary and compelling reasons based simply on the general risk of COVID-19, an argument that would apply to essentially every prisoner. that is all defendant has done here. Therefore, the court will deny the pending motion for compassionate release pursuant to § 3582(c)(1)(A).

**C.**     **Consistency With the § 3553(a) Factors**

     Because the pending motion fails to establish extraordinary and compelling reasons justifying compassionate release in this case, the court need not address whether any reduction in

/////

defendant's sentence would be consistent with consideration of the sentencing factors set forth at 18 U.S.C. § 3553(a).[6]

## CONCLUSION

For the reasons explained above, defendant's motion for compassionate release (Doc. No. 463) is denied.

IT IS SO ORDERED.

Dated:  **October 6, 2020**                              /s/ Dale A. Drozd
                                                           UNITED STATES DISTRICT JUDGE

---

[6] Nonetheless, the court notes that defendant Gonzalez was originally sentenced to straight probation in this case and was only sentenced to 60 months imprisonment after violating the courts trust by blatantly violating the conditions of that probation.  Given the similar 60 months sentences imposed on several of his co-defendants, serious sentencing disparity issues under 18 U.S.C. § 3553(a) would be raised by a reduction in his current sentence.  Finally, defendant Gonzalez has now served only approximately 22 months of his 60 month sentence. *See United States v. Shayota*, No. 1:15-cr-00264-LHK-1, 2020 WL 2733993, at *5–6 (N.D. Cal. May 26, 2020) ("The length of the sentence remaining is an additional factor to consider in any compassionate release analysis, with a longer remaining sentence weighing against granting any such motion." (citation omitted)).  All of these considerations would also weigh against the granting of the requested relief in this case.